**PETER C. BLAIR**
California Bar No. 270959
Blair Defense Criminal Lawyers
225 Broadway, Suite 1750
San Diego, CA 92101
Telephone: (619) 357-4977
Facsimile: (833) 985-1942
peter@blairdefense.com

Attorney for Defendant:
BRETT PATRICK WENBOURNE

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(THE HONORABLE ROBERT S. HUIE)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRETT PATRICK WENBOURNE,<br><br>    Defendant. | Case Nos.: 3:22-CR-01241-RSH<br>3:24-CR-00907-RSH<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>DATE: May 9, 2025<br>TIME: 9:00 a.m. |

**TO: Adam Gordon, United States Attorney; Ronald Sou, Arnold Dale Blankenship, and Jonathan I. Shapiro, Assistant U.S. Attorneys; and to Jacob Courts, United States Probation Officer:**

The defendant, Brett Patrick Wenbourne, by and through his counsel, Peter C. Blair, hereby submits the following Sentencing Memorandum in support of his request for a sentence of credit for time served.

# I.
## STATEMENT OF FACTS

The statement of facts in the Plea Agreement accurately reflects the facts of this matter. However, defense counsel respectfully requests that this Court consider the following additional facts related to the arguments outlined below, specifically applying to Mr. Wenbourne's request for variance under 18 U.S.C. §3553 and a downward departure pursuant to U.S.S.G §3B1.2.

1

# II.
# SENTENCING CONSIDERATIONS

### A.  The Guidelines

The parties agree on the following calculations of the advisory guideline range in this case:

**Group One:**
| | |
|---|---|
| Base Offense Level [§§ 2E1.3(a)(2) and 2A2.2(a)]: | 14 |
| Dangerous Weapon [§ 2A2.2(b)(2)(B)]: | +4 |
| Serious Bodily Injury [§ 2A2.2(b)(3)(D)]: | +4 |

**Group Two:**
| | |
|---|---|
| Base Offense Level [§ 2D1.1(c)(7)]: | 26 |

Group 1 = ½ Unit
Group 2 = 1 Unit

| | |
|---|---|
| Combined Offense Level [§ 3D1.4]: | 28 |
| Acceptance of Responsibility [§ 3E1.1(a)]: | -3 |
| Combination of Circumstances [§ 5K2.0]: | -2 |
| **Adjusted Offense Level:** | **23** |
| **Sentencing Guideline Range:** | **92-115 Months** |

Mr. Wenbourne has 15 criminal history points. Accordingly, he is in a Criminal History Category of VI. Therefore, the resulting Guideline Range is 92-115 months of custody.

### B.  Section 3553(a) Factors

After determining the proper advisory Guideline range, the Court must evaluate whether the sentence is substantively reasonable and comports with the purposes of sentencing. Specifically, the Court must consider the following relevant factors outlined in 18 U.S.C. § 3553(a) in imposing a sentence.

<u>Circumstances of the Offense and Characteristics of the Defendant</u>

Mr. Wenbourne was born and raised in San Diego, California, where he resided with both of his parents as well as his older brother and sister. By all

accounts, Mr. Wenbourne had a positive, nurturing upbringing wherein his parents provided him with all of his basic needs.

Mr. Wenbourne was a well-rounded child who performed well academically while he also managed to be an outstanding athlete. As the best wrestler in his school, he traveled around the country to compete in tournaments. Mr. Wenbourne was a very caring boy who could always be found looking out for his peers, especially those he saw unable to stand up for themselves. This protective instinct has stuck with him through his adulthood.

Despite the promise that Mr. Wenbourne showed in his youth, he ultimately began to unravel by the time he was approximately fifteen years old, due in large part abuse he suffered, which resulted in behavioral and substance abuse issues. At thirteen years old, Mr. Wenbourne tried alcohol and marijuana for the first time with his older brother. Within just three years, he progressed to methamphetamine, which he rapidly began abusing almost daily. Mr. Wenbourne's grades suffered, and he was frequently in trouble at school due to excessive absences and unruly behavior. In tandem, Mr. Wenbourne began associating with gang members and by sixteen years old he joined the Lakeside Gangsters, which further entrenched him in a life of crime and addiction.

While in no way an excuse for Mr. Wenbourne's decision to partake in gang related and criminal activity, his substance abuse issues were certainly a catalyst for this behavior. His severe substance abuse issues are due at least in part to deeply rooted trauma that he has never been able to address. At nine years old, Mr. Wenbourne was sexually abused by his fifteen-year-old neighbor. The abuse was extensive and occurred on at least fifty occasions.

Unsurprisingly, the abuse Mr. Wenbourne suffered as a child left a profound impact on him which he has never dealt with. Mr. Wenbourne disclose his abuse to

Dr. Reavis during a psychological evaluation. (*See Exhibit A*, *Filed Under Seal*). In discussing the trauma with Dr. Reavis, Mr. Wenbourne became extremely agitated and expressed discomfort that the court would be made aware of the incidents. The lasting effects of the trauma have manifested predominately in anger which Mr. Wenbourne has struggled to control.

Mr. Wenbourne kept his abuse a secret from everyone in his life before ultimately confiding in his parents approximately six years later. While his mother was supportive, his father expressed disbelief, which exacerbated Mr. Wenbourne's shame and anger. It was around this time that Mr. Wenbourne began using alcohol, marijuana, and methamphetamine, presumably in attempts to cope with the lasting psychological impacts of his abuse.

Though it would be easy to do so, Mr. Wenbourne does not blame the horrible abuse that he endured as a young boy for the current state of his life. He takes full responsibility for his decisions to associate with dangerous gangs and narcotics, which began far before the present case.

Mr. Wenbourne's untreated Attention Deficit/Hyperactive Disorder and anxiety are additional factors which contribute to his struggle with substance abuse. He reported that, as a child, he saw a doctor for his behavioral issues and was diagnosed with ADHD, at which point he was prescribed Adderall. However, his older brother teased him for his diagnosis and for taking medication, so he stopped treatment altogether. Mr. Wenbourne turned to illicit coping mechanisms in the absence of legitimate means, specifically abusing methamphetamine, which provides him with a sort of calm. In his evaluation, Dr. Reavis noted that Mr. Wenbourne would certainly benefit from psychiatric intervention to treat the persistent ADHD and anxiety which feed Mr. Wenbourne's feelings of irritability, unease, and hypervigilance, all of which he has sought to silence with illicit substances instead.

  Mr. Wenbourne's involvement in the present offenses are inextricably linked to his substance abuse and involvement with the Lakeside Gangsters. At thirty-five years old, Mr. Wenbourne has regrettably spent over half of his life associating with gang activity, which has virtually destroyed his life. He has seen the tremendous toll that his substance abuse and criminal activity have taken on his loved ones. He feels that he is a burden on his parents, who he has relied on for assistance as he has battled his addiction and numerous legal struggles.

  Further, all of Mr. Wenbourne's romantic relationships have been troubled by mutual substance abuse and criminality. He has two sons, ages thirteen and four, from two different relationships. In 2019, Mr. Wenbourne had another child with his then-girlfriend, Justine George, who has been left to raise their son alone since his arrest in December 2020 for the present assault offense. Perhaps most painfully, he has been unable to see or speak to his now four-year-old son, who was only nine months old at the time of his arrest. Mr. Wenbourne is devastated that he has been absent from his young son's life, and though he has tried to be involved as much as possible, he has ultimately refrained from communicating with his son directly to spare him the confusion and turmoil attendant to explaining to a young child why his father is in custody.

  Mr. Wenbourne's decision to participate in the present criminal activities has nearly cost him everything. His eyes are finally open to how incredibly destructive his longstanding substance abuse and gang association have been. Accordingly, Mr. Wenbourne has vowed to cut all ties with his gang life. He has started to wash away the stains of his gang affiliation by removing tattoos that he received while in prison to represent his dedication to his gang and the white supremacist ideologies they identify with. Despite Mr. Wenbourne's tumultuous past, his family remains

completely supportive of him and is willing to do anything it takes to set him on the path for lasting success. (Exhibit B).

Protecting the Public

Mr. Wenbourne has a serious and lengthy criminal history; however, he is not presently a threat to the public. Woven throughout Mr. Wenbourne's significant record is the common thread of substance abuse and untreated mental health issues. Prior to his 2020 incarceration for the assault of Mr. Denney, he was using methamphetamine daily and was high at the time of the offense. Further, Mr. Wenbourne's involvement in drug dealing in Case No.: 3:24-CR-00907-RSH was primarily in furtherance of his own addiction.

However, Mr. Wenbourne has maintained his sobriety since his 2020 arrest. At approximately four and a half years, this marks Mr. Wenbourne's longest stretch of sobriety by far, as he had previously only managed to abstain for about four months. This extended period of sobriety shows great promise in Mr. Wenbourne's ability to stay clean. In furtherance of this goal, Mr. Wenbourne has been accepted into Heartland House, a residential inpatient and transitional living program which would provide the structure that he needs to successfully transition back into society after his nearly five years in custody. (Exhibit C).

Additionally, As noted by Dr. Reavis' evaluation, Mr. Wenbourne would greatly benefit from psychiatric intervention for his ADHD and anxiety to help ensure his lasting sobriety, which Mr. Wenbourne is eager to obtain upon his release. Should Mr. Wenbourne be afforded the opportunity to participate in treatment for not only his substance abuse issues, but also the underlying trauma and mental health issues which he has allowed to fester for so long, he can ensure that he will ever appear before this court again.

### C. Request for Mitigating Role

Pursuant to USSG § 3B1.2, the court may decrease the defendant's offense level by four levels if the defendant was a minimal participant in criminal activity, by two levels if the defendant was a minor participant in criminal activity, and by three levels if the defendant is somewhere in between. USSG § 3B1.2, comment. (n.3) provides the following application note:

> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from.

Here, Mr. Wenbourne should be afforded a three-level variance for his role in the assault offense in Case No.: 3:22-CR-01241-RSH, which falls between the minimal and minor participant subcategories.

Mr. Wenbourne is certainly established within and knowledgeable about the customs and practices of the gang lifestyle, such that he reasonably should have known that an assault was likely to occur during the interaction between the victim and Mr. Wenbourne's co-defendant, Michael Trippe. However, he has always maintained that there was no plan in place to harm Mr. Denney, and that the resulting assault was a complete shock.

A clear indication of Mr. Wenbourne's state of mind at the time of the assault is reflected in what was intended to be a confidential conversation between Mr. Wenbourne and Attorney Joseph Seipel, an associate of defense counsel, at San Diego Central Jail Immediately following his arrest in this case in December of 2020. A transcript of the call between counsel and Mr. Wenbourne is attached to this motion. (*Exhibit D*, *Filed Under Seal*). As reflected in the transcript, Mr. Wenbourne was very candid with Mr. Seipel about what occurred on the day of the assault, detailing his actions, motivations, and knowledge of the offense at the time.

In the days after the stabbing, Mr. Denney attempted to contact Mr. Wenbourne and Mr. Trippe. Mr. Wenbourne ultimately spoke with Mr. Denney over the phone, which was ultimately recorded as Mr. Wenbourne's phone was tapped due to investigations in Case No.: 3:24-CR-00907-RSH. A transcript of this call is filed under seal. (*Exhibit E, Filed Under Seal*). During the call, Mr. Wenbourne reiterates his shock at the stabbing.

Given the above, the factors set forth in USSG § 3B1.2, comment. (n.3(c)(i)-(v)) weigh in favor of an adjustment. It is evident that Mr. Wenbourne did not travel to Pacific Beach with Mr. Denney for the purpose of assaulting Mr. Denney. He was not aware of any plan to assault Mr. Denney, if one existed, nor did he participate in crafting such a plan. Mr. Wenbourne did not influence Mr. Trippe to stab Mr. Denney, nor was he involved in the actual altercation.

While Probation Officer Jacob Courts states in the Presentence Report that an adjustment for Mr. Wenbourne's role in the offense is not appropriate due to the required participation of both Mr. Trippe and Mr. Wenbourne to complete the offense, USSG § 3B1.2, comment. (n.3) notes that a defendant's performance of an essential role in the offense does not prohibit a mitigating role adjustment.

Accordingly, Mr. Wenbourne respectfully submits that a departure under USSG § 3B1.2 is appropriate due to his lack of knowledge, planning, and control over the offense.

### D.     Analysis and Request for Variance

Based on Mr. Wenbourne's Total Offense Level (23) and his Criminal History Category (VI), his guideline range is 92-115 months. Mr. Wenbourne respectfully submits that a variance under Section 3553(a) and a sentence of time served in custody is warranted.

Mr. Wenbourne accepts full responsibility for his conduct in both cases before this Court and is very remorseful for his actions. The defense appreciates and fully understands that the request for a sentence of time served, which would equate to approximately sixty months in custody, is potentially a deviation from sentences in other cases with such charges as Mr. Wenbourne's. However, given Mr. Wenbourne's unique personal history, specifically the tragic abuse he experienced as a child and the regrettable trajectory that resulted, as well as Mr. Wenbourne's limited role in the assault, and the somewhat duplicative nature of the narcotics case and the predicate acts in the RICO assault case, defense counsel respectfully submits that this sentence is appropriate.

This request is underscored by Mr. Wenbourne's flawless record in custody during the pendency of these cases, during which he has remained sober for the first time in his life. He has also began removing his gang tattoos, which is an extremely profound step in denouncing his past gang lifestyle. Any additional time in custody, specifically in prison, will only serve as an unjust punitive sanction. Instead, Mr. Wenbourne is dedicated to moving on from this life of crime, raising his son, and helping others obtain the same sobriety that by working in a rehabilitation facility.

Up to this point, Mr. Wenbourne resisted seeking professional help for his very serious mental health issues. However, he now knows that he is capable of lasting sobriety given the nearly five years that he has under his belt at this time. Accordingly, with proper treatment, Mr. Wenbourne will be able develop the coping mechanisms to deal with his past pain without turning to illicit substances as he has previously. Mr. Wenbourne has an extremely supportive family that is willing to do whatever possible to support him as he rebuilds his life and leaves his addiction and gang affiliation in his past. In light of these factors, Mr. Wenbourne respectfully submits that a variance is warranted and a sentence of credit for time served is appropriate.

### III. CONCLUSION

In light of the foregoing, Mr. Wenbourne respectfully requests that the Court impose a sentence of credit for time served.

DATED: May 2, 2025

Respectfully submitted,
s/ Peter C. Blair
PETER C. BLAIR
Attorney for Mr. Wenbourne